Matter of the Application for Letters of Administration upon the Goods, Chattels and Credits of BERTHA C. WATSON, Deceased.

(Surrogate's Court, Albany County, February, 1916.)*

Decedent Estate Law, section 98 — divorce — husband's marriage to co-respondent who left no next of kin — who entitled to her estate.

Soon after the entry of a decree of divorce which contained a provision that it should not be lawful for the plaintiff husband to marry again until the death of the defendant, which has not yet occurred, the husband and B, the intestate herein, who was the co-respondent in the divorce action, began living together as husband and wife, and by acknowledgment, declarations, conduct, repute, reputation among relatives and neighbors and by cohabitation held themselves out to the world as husband and wife, but there is no proof of a ceremonial marriage. Most of the estate of the father of the plaintiff in the divorce action was devised and bequeathed to him and to B named in the will as the wife of testator's son who by his last will, which was duly probated, gave all his estate to B naming her as his wife and appointing her executrix.

Held, that the relationship of husband and wife existed between the intestate and the plaintiff in the divorce action at the time of his death, and in the absence of known next of kin or heirs at law of the intestate the son of her husband is entitled to the whole of her estate under the statute and to the right of administration thereon.

APPLICATION for letters of administration.

Egburt E. Woodbury, Attorney-General (Alexander T. Selkirk, Deputy Attorney-General, of counsel), for State of New York.

* Received too late for insertion in proper place. ·Affirmance of opinion of surrogate, 175 App. Div. ——.[REPR.

Misc.] Surrogate's Court, Albany County, February, 1916.

Charles B. Templeton, for county treasurer.

Keeshan & Sleicher, for Frederick C. Watson, claimant.

VANDERZEE, S. Application for letters of administration is made by the county treasurer, as public administrator, upon the estate of Bertha C. Watson, deceased. The petition states, and so far as the evidence discloses it is a fact, that the decedent left her surviving no husband, next of kin or heir-at-law.

Frederick C. Watson has filed an answer, admitting all the allegations of the petition, excepting that he claims to be entitled to the fund by reason of the fact that his father, William H. Watson, Jr., deceased, was the husband of the decedent. His claim is based upon the provisions of subdivision 16 of section 98 of the Decedent Estate Law, which provides that, if no husband or next of kin survive the decedent, distribution shall be made among the next of kin of the husband.

The attorney-general of the state of New York has appeared herein by one of his deputies who, with the attorney for the county treasurer, have vigorously resisted the claims of the respondent.

The question for me to determine is: Did the relationship of man and wife exist between the decedent, Bertha C. Watson, and William H. Watson, Jr., at the time of the death of the latter, which occurred in the year 1913. If it did exist, there being no known next of kin or heir-at-law of Bertha C. Watson in existence, then Frederick C. Watson, the son of William H. Watson, Jr., is entitled to the whole estate under the statute.

The state of New York and the respondent are the only parties interested in the question of marriage; no other interests are now involved. There is in my mind

Surrogate's Court, Albany County, February, 1916. [Vol. 97.

much doubt of the right of the state to contest the issue
in a proceeding of this character. It would seem to be
contrary to public policy and principles of justice for
the state, in order to promote its caducary possessions,
to enter its own courts spreading obloquy and disgrace
upon its own citizens, who cannot now defend their
honor and reputations. However, I have permitted
such evidence to be introduced and will discuss it.

On June 23, 1895, a decree of divorce was made in
this county, dissolving the bonds of matrimony then
existing between William H. Watson, Jr., and Emma
L. Watson, his wife. The judgment contained this
provision: "It shall not be lawful for the said Wil-
liam H. Watson, Jr., the plaintiff, to marry again until
the said Emma L. Watson, the defendant, shall be
actually dead." Emma L. Watson is still alive. The
respondent Frederick C. Watson is the only child of
the parties to that action. The decedent herein, Bertha
C. Watson, was the co-respondent named in the action
for divorce. It does not appear that any modification
of the decree of divorce was ever made, nor that any
consent for his remarriage was ever secured.

It is conceded that soon after the entry of the decree
of divorce, William H. Watson, Jr., and the intestate,
Bertha C. Watson, began living together as man and
wife and by acknowledgment, declarations, conduct,
repute, reputation among neighbors and relatives and
by continuous cohabitation held themselves out to the
world as husband and wife. No record proof that a
ceremonial marriage was ever performed has been
offered. William H. Watson, Sr., died in the year
1907, leaving a last will and testament, established in
this court, wherein and whereby he devised and
bequeathed most of his estate to his son, William H.
Watson, Jr., and to Bertha C. Watson, naming her in
the will as the wife of his son, William H. Watson, Jr.

William H. Watson, Jr., died in the year 1913, leaving
a will by which he devised and bequeathed all his prop-
erty to Bertha C. Watson, naming her as his wife, and
appointed her executrix thereof.   In the proceeding
for the probate thereof, Bertha C. Watson executed
and verified the petition and other usual papers setting
forth that she was the widow of William H. Watson, Jr.

Several deeds of conveyance of real estate executed
by William H. Watson, Jr., after the decree of divorce
were introduced in evidence, in each of which Bertha
C. Watson is described as the wife of William H. Wat-
son, Jr., and the certificate of acknowledgment attached
thereto, taken by the attorney for the county treasurer
herein, acting as notary public, certifies upon knowl-
edge that she was the wife of the grantor.

It will be observed that the marriage relation, if it
existed, must be founded upon presumption, because
there is no proof in this proceeding of the fact.   A pre-
sumption sustaining marriage has always been indulged
by courts of law in controversies where the validity of
the marriage was at issue.   It is a branch of the gen-
eral rule of equity and justice which assumes innocence
and requires proof of guilt; assumes morality and not
immorality; assumes social integrity and not social
disgrace; assumes honesty and not fraud.   *Matter of
Matthews,* 153 N. Y. 443; *Matter of Garner,* 59 Misc.
Rep. 116 and cases there cited.

The question of legitimacy of children has been an
issue in most of the cases in which this doctrine of pre-
sumption has been stated.   If it were the issue here,
there can be no doubt that upon all the facts of this
case the court would pronounce the marriage relation
to have been sufficiently established.   The language of
Judge Vann in *Gall* v. *Gall* would then apply:  " The
cohabitation, apparently decent and orderly, of two
persons opposite in sex, raises a presumption of more

or less strength that they have been duly married. While such cohabitation does not constitute marriage, it tends to prove that a marriage contract has been entered into by the parties.   *   *   *   It is sufficient if the acts and declarations of the parties, their reputation as married people and the circumstances surrounding them in their daily lives naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife.''

I do not see why, in the case of devolution of property, where it would otherwise escheat, the presumption applied in case of legitimacy should not obtain. The state is not solicitous for escheated property. The statute by which the respondent here is permitted to claim indicates the attitude of the sovereign state in respect to property likely to remain forever unclaimed, and section 91 of the Decedent Estate Law is along similar lines in reference to real property. The willingness of the legislature in enactments relating to escheat, whereby the right and title of the state is granted to persons having a fair claim thereto, is significant of the disposition of the state, and these enactments are of annual occurrence and rather numerous.

Upon the undisputed facts in this case, I prefer to indulge in the same quantity and quality of presumption that courts have for many years applied in cases of legitimacy. This course makes for orderly instead of disorderly society; for morality instead of immorality; for lawful commerce instead of the violation of decency as well as law.

This is not a strained conclusion, tending to bring those of alien blood within the description of heirs at law to one dying without heirs of the blood. The fund in this proceeding is Watson property; it was accumulated by the grandfather of the respondent and came

to the decedent because William H. Watson, Sr., and William H. Watson, Jr., believed the intestate was the wife of the latter. The respondent is a direct descendent in blood of the man who produced the estate and in justice should receive it, unless heirs at law and next of kin of the decedent should appear and establish their status.

The respondent being entitled to the fund has also the right to administer it. Letters of administration may issue to Frederick C. Watson upon his filing the required oath and security in the penalty of $3,000.

Decreed accordingly.